Rtjppin, Chief Justice.
 

 — Upon’ the decision of this case heretofore, judgment was rendered, as well for the usual costs in this Court, as for those in the Superior Court; and the clerk accordingly issued an execution against the appellant and his sureties, for the costs in the Supreme Court.
 

 On behalf of the appellant, a motion has been made to set aside the execution, upon the single ground that costs are not recoverable here.
 

 If that w'ere true,, it might be sufficient to say, that it forms no objection to the process, but rather to the judgment, which obliged the clerk to issue it, and therefore this motion could not be sustained.
 

 But we apprehend that the motion rests upon a total mistake, in regard to both ; and that not only is the execution warranted by the judgment, but the judgment itself is required by the law.
 

 It has been the course of the court, without a single exception, since 1810, to adjudge costs in all appeals; save only against the state. The Court could not overturn such a train of precedents, without a mandate from the legislature. In truth, however, the rule owes its existence to
 
 *490
 
 the statute law, according to a necessary construction, if not the express letter.
 

 In origin of ihe Supreme Court, no costs were given, for no judgment was rendered here. The only jurisdiction was of questions adjourned before judgment, by the Judge of the Superior Court,' for the solution of doubts entertained by himself. But,as there might be error, though the judge was confident of the contrary, the General Assembly thought it proper to give to the party himself, as a matter of right, the power to bring.under revision the opinions of the judge, and the judgment of the Superior Court, by way of appeal. Unless costs attended such appeals, it might be expected that, for the sake of delay, or through contumacy, almost every case would be brought up. It was most natural, therefore, that the grant of the right of appeal, should be accompanied by a provision for costs. Accordingly, the very first act, which allows of an appeal — 1810,
 
 (Reo. ch.
 
 785, §7) — provides that the appellant shall give bond, &c. and “ that the Supreme Court shall adjudge costs to be paid by the party cast, and execution shall issue therefor, in like manner, as from the Superior Courts.” No fee-bill is, indeed, set forth- in the act; but in the opinion of the judges, that omission did not warrant them in disobeying or disregarding altogether the express command of the statute. They conceived it to be their duty to adjudge
 
 reasonable
 
 costs, upon a principle of construction, of ancient origin and universal application, that defective provisions, as to matter of detail in a remedial statute, must be supplied, rather than the positive general enactments should be rendered impotent. The judges of that day, therefore, adopted for this Court the fees which the assembly had prescribed for the old District Courts, as they had been the highest courts created in this state, antecedent to the establishment of the Supreme Court. In conformity to that rule, and within the knowledge of the profession and of the legislature, costs have been taxed by the clerk and adjudged by the court in every intervening case up to the present time; and we are not without surprise* that a doubt of the propriety of so doing should be started at this late day.
 

 
 *491
 
 The acts of 1818, it is true, have nothing express about costs here
 
 nominatim.
 
 But it seems plain to us, that they were intended to be, and are continued by those acts. The whole jurisdiction and powers of the preceding court are transferred to the present court; and, in the next place, no cause is to be brought here but by appeal, in which the appellant must give bond, with sureties. In that provision, criminal cases are included, in which it would seem that the bond can cover nothing else but costs, since a recognizance or imprisonment secures the appearance of the accused; and, certainly, the sureties are not to represent him in suffering the punishment. But, besides all that, the sixth and seventh sections of the supplemental act provide, that the Supreme Court shall render judgment on the appeal-bond, in the same manner as a Superior Court may on an appeal from the County Court; and in case the appellant shall fail to file the record, the clerk of the Superior Court shall, after certificate from this court, issue execution, as though no appeal had been prayed, taxing double costs against the appellant. What costs are those? Surely not double the costs before adjudged in the Superior Court, including witnesses, and process of every kind; but in analogy to the act of 1777,
 
 (Rev. eh.
 
 115, § 77), it means double the costs taxable in the Supreme Court, according to the known course of that court, under the act of 1810. The recognition of that course is also found in the subsequent ’act of 1825, (Taylor’s
 
 Rev. ch.
 
 1282,) so explicitly, as to remove every difficulty. The object of this last statute is to require the payment of the costs in the respective' courts, to be made at points most convenient to the persons entitled to the several portions of it. It authorises the clerks of the Superior Courts to issue execution for the costs incurred in those Courts, “ and the clerk of the Supreme Court to issue execution for the costs incurred in that Court.” As a legislative exposition of prior statutes, or as a confirmation of the' previous judicial
 
 regula gene-ralis,
 
 and of the practice under it, here is an expression too plain and precise to be evaded or resisted. It is a full answer to the motion, which must be'refused.
 

 Per Curiam. Motion refused.